# IN THE UNITED STATES DISTRICT COURT OF
# THE SOUTHERN DISTRICT OF FLORIDA

WESTGATE RESORTS, LTD., a Florida limited partnership, by and through its general partner WESTGATE RESORTS, INC., a Florida corporation, WESTGATE VACATION VILLAS, LLC, a Florida limited liability company, WESTGATE LAKES, LLC, a Florida limited liability company, WESTGATE BLUE TREE ORLANDO, LTD., a Texas limited partnership, by and through its general partner BLUE TREE LBV, LLC, a Florida limited liability company, WESTGATE GV AT THE WOODS, LLC, a Florida limited liability company, WESTGATE TOWERS, LLC, a Florida limited liability company, WESTGATE FLAMINGO BAY, LLC, a Florida limited liability company, WESTGATE MYRTLE BEACH, LLC, a Florida limited liability company, WESTGATE PALACE, LLC, a Florida limited liability company, WESTGATE RVS ORLANDO, LLC, a Florida limited liability company, WESTGATE VACATION VILLAS OWNERS ASSOCIATION, INC., a Florida corporation, CLUB ORLANDO VACATION RESORT OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE LAKES OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE TOWERS OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE TOWN CENTER OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE TOWERS NORTH OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE BLUE TREE RESORT OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE PALACE OWNERS ASSOCIATION, INC., a Florida corporation, WESTGATE SOUTH BEACH OWNERS

Misc. No.: _____

Underlying Case: *Westgate Resorts, Ltd., et al., v. Mitchell Reed Sussman, an individual, and Mitchell Reed Sussman & Associates, a Law Firm*, Case No.: 17-CV-01467-RBD-DCI

ORAL ARGUMENT REQUESTED

ASSOCIATION, INC., a Florida corporation, WESTGATE SMOKY MOUNTAIN RESORT AT GATLINBURG, OWNERS ASSOCIATION, INC., a Tennessee corporation, WESTGATE FLAMINGO BAY, LAS VEGAS OWNERS ASSOCIATION, INC., a Nevada corporation, WESTGATE HISTORIC WILLIAMSBURG, OWNERS ASSOCIATION, INC., a Virginia corporation, WESTGATE PARK CITY RESORT & SPA, OWNERS ASSOCIATION, INC., a Utah corporation, RVS-ORLANDO II CONDOMINIUM ASSOCIATION, INC., a Florida corporation, WESTGATE MYRTLE BEACH OCEAN FRONT OWNERS ASSOCIATION, INC., a South Carolina corporation, CEDAR RIDGE AT THE WOODS CONDOMINIUM OWNERS ASSOCIATION, INC., a Missouri corporation, WESTGATE BRANSON WOODS OWNERS ASSOCIATION, INC., a Missouri corporation, GRAND VISTA AT EMERALD POINT CONDOMINIUM OWNER'S ASSOCIATION, INC., a Missouri corporation, PAINTED MOUNTAIN GOLF VILLAS CONDOMINIUM ASSOCIATION, INC., an Arizona corporation, CENTRAL FLORIDA INVESTMENTS, INC., a Florida corporation, BLUE TREE RESORT AT LAKE BUENA VISTA CONDOMINIUM ASSOCIATION, INC., a Florida corporation, WESTGATE GV AT EMERALD POINTE, LLC, a Florida limited liability company, WESTGATE GV AT PAINTED MOUNTAIN, LLC, a Florida limited liability company, LOGGER'S POINTE AT THE WOODS CONDOMINIUM PROPERTY OWNERS' ASSOCIATION, INC., a Missouri corporation, WESTGATE LAS VEGAS RESORT, LLC, a Delaware limited liability

2

company, WESTGATE LAS VEGAS
RESORT OWNERS ASSOCIATION,
INC., a Nevada corporation, RVS-
ORLANDO A CONDOMINIUM
ASSOCIATION, INC., a Florida
corporation, and WESTGATE SOUTH
BEACH, LLC, a Florida limited liability
company,

        Petitioners,
v.

JAMES KLOHN, DANIEL STERN,
SUMMER WILLIAMS, and JESSICA
MOST, individuals,

        Respondent.

_____/

## MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS AND OVERRULE PRIVILEGE AND CONFIDENTIALITY OBJECTIONS

Westgate Resorts, Ltd. and Westgate Resorts, Inc. (collectively "Westgate" or "Petitioners"), pursuant to Fed. R. Civ. P. 45, file this Motion to Compel Compliance with Subpoenas and Overrule Privilege and Confidentiality Objections ("Motion") raised by Respondents in opposition to subpoenas issued in *Westgate Resorts, Ltd., et al., v. Mitchell Reed Sussman and Mitchell Reed Sussman & Associates*, Case No.: 17-CV-01467-RBD-DCI. The subpoenas seek documents relating to the quitclaim deeds Respondents prepared purporting to transfer timeshare ownership to Westgate, without Westgate's knowledge or consent. Respondents have refused to produce the responsive documents citing frivolous boilerplate objections. Accordingly, Westgate moves for an order that (1) overrules Respondents' objections; (2) compels production within ten days of the entry of an order on this Motion; and (3) requires Stern and Klohn to testify regarding their communications with Sussman. In the

alternative, Westgate request that the Court transfer this Motion to the United States District Court for the Middle District of Florida, where the original action is pending.

## INTRODUCTION

Westgate, a timeshare developer and manager, is suing California lawyer Mitchell Reed Sussman and his law firm Mitchell Reed Sussman & Associates for tortiously interfering with its contractual and advantageous business relationships. Ex. 1. Westgate's tortious interference claims are predicated on the fraudulent quitclaim deeds Sussman records throughout the United States that purport to transfer timeshare interests to a straw owner or back to the developer— without the developer's knowledge or consent. This issue is the subject of the Motion for Temporary Injunction that is currently before the Court. Ex. 2. Based on these fraudulent quitclaim deeds, Sussman represents to his clients that they have been released from their contracts. Duped timeshare owners cease making their mortgage and maintenance fees obligations solely to later be met with damaged credit scores, foreclosures, and even bankruptcy.

To conceal this scam, Sussman has stonewalled discovery. Despite two court orders and a January 2019 discovery deadline, Sussman has yet to produce the deeds at issue in this case. Sussman's discovery violations have forced Westgate to issue subpoenas to the Florida lawyers Sussman hired to prepare the fraudulent quitclaim deeds. These Florida lawyers, however, refused to produce the responsive documents and asserted frivolous privilege and confidentiality objections. On that basis, they have also refused to testify about their communications with Sussman regarding the Underlying Litigation and the subject subpoenas. The Court should overrule those objections—just as Magistrate Judge Daniel Irick did in the Underlying Litigation—and compel Respondents to produce all evidence responsive to the subpoenas. Ex. 3.

## FACTS

**A.   *The Underlying Litigation concerns tortious interference with Westgate's contractual and advantageous business relationships.***

On August 9, 2017, Petitioners filed a three-count Complaint against Mitchell Reed Sussman and Mitchell Reed Sussman & Associates to hold them accountable for fraudulently interfering with Westgate's contractual and advantageous business relationships ("Underlying Litigation"). Ex. 1.   To perpetrate this fraud, Sussman branded himself as a real estate lawyer specializing on timeshare termination services.  Ex. 4.  Sussman claims to possess the ability to negotiate the termination of any timeshare contract—regardless of the facts underlying the particular transaction.  *Id.*  Sussman's timeshare termination services consist simply of sending baseless demand letters requesting that Westgate terminate the timeshare contracts based on vague assertions of fraud and misrepresentation during the sales process. Ex. 5.

After Westgate rejects the baseless demands, Sussman records quitclaim deeds transferring the property to a straw owner or back to the developer—without the developer's consent. Ex. 6.  After recording the deeds, Sussman advises his clients that the fraudulent deeds effectively terminate their contractual obligations to the timeshare. Ex. 7.  Relying on Sussman's misrepresentations, the timeshare owners default on their timeshare contracts solely to later be met with ruined credit scores, foreclosures, and even bankruptcy.  Ex. 8, Wenz Dep. 43:19-25, 44:1-3 (Oct. 8, 2018).   After recognizing their misfortune, several duped timeshare owners reported Sussman to the Florida Bar.  Ex. 9.

The Bar's inquiry focused on Sussman's multijurisdictional practice of law. Ex. 10. To appease the investigators, Sussman began hiring Florida-licensed attorneys to prepare the

quitclaim deeds. *Id.* Sussman's strategy remained otherwise unchanged. He continued to record the quitclaim deeds he instructed Florida lawyers to prepare, which continued to transfer the property back to the developer without the developer's consent. But, to avoid any personal responsibility for the fraudulent deeds, Sussman required the Florida lawyers to execute "Local Counsel Agreements" that rendered them jointly responsible for the deeds. Ex. 11, ¶ 5. To ensure the Florida lawyers remained responsible for the deeds, Sussman required that the local attorneys affix their name and bar number to each deed they prepared. *Id.* at ¶ 1(c). Even though they were legally responsible for the deeds, Sussman barred the Florida lawyers from communicating with the timeshare owners. *Id.* at ¶ 1(d). The Florida lawyers had no ability to corroborate the facts underlying the conveyance and were forced to rely on Sussman to convey accurate information regarding the transaction. *Id.*

The Florida lawyers often became suspicious and challenged Sussman's practice of transferring timeshare ownership back to the developer without the developer's consent. Ex. 12. In response, Sussman continued to leverage his alleged "real estate" expertise to convince the Florida lawyers that the deeds were valid. *Id.* While some Florida lawyers accepted Sussman's explanations, many others recognized that the practice was illegal and terminated their relationship with Sussman. Ex. 13. The lawyers that assisted Sussman perpetrate this fraud are critical witnesses in this case. Cognizant that the testimony of these lawyers will expose his fraud, Sussman has refused to identify many of these key witnesses. And, despite two court orders, including orders overruling claims of privilege, Sussman has yet to produce his communications with these lawyers and the deeds they prepared. Ex. 14.

**B.     *Westgate issued document subpoenas in the Underlying Litigation.***

To expedite discovery, which closes January 4, 2019, Westgate issued subpoenas to get the documents and evidence directly from the Florida lawyers identified to date, including James Klohn, Daniel Stern, Summer Williams, and Jessica Most.  Ex. 15.  In these subpoenas, Westgate sought documents and communications relating to the quitclaim deeds these lawyers prepared at Sussman's behest.  *Id*.  Klohn, Stern, and Williams uniformly objected to producing the deeds they prepared as well as any communications and spreadsheets relating to those deeds. Ex. 16. In boilerplate fashion, Respondents asserted that the responsive documents were protected by the work product doctrine and the attorney-client privilege.[1]  Most, on the other hand, asserted that the confidentiality provision in the Local Lawyer Agreement barred her for producing any responsive documents. Ex. 17; *see also* Ex. 10, ¶ 11.

## MEMORANDUM OF LAW

### A.      *Applicable Law*

Rule 45 governs discovery from nonparties by subpoena. Third-party subpoenas are subject to the general provisions governing discovery articulated in Rule 26.  *Barrington v. Mortage IT, Inc.*, 07-61304-CIV, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007).  As such, subpoenas may request production of any nonprivileged matter that is relevant to any party's claims or defense. Fed. R. Civ. P. 26 (b).  The party or attorney issuing the subpoena must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). In addressing the burden imposed on nonparties, a court considers the requesting party's need for the documents, the breadth of the document request,

---

[1]  Similarly to Sussman, Respondents cannot meet their burden of proving that the responsive documents are protected by either the attorney-client privilege or the work-product doctrine. Indeed, the Respondents did not anticipate litigation at the time they worked for Sussman.  They also never communicated with the owners Sussman represented.

and the time period covered by the request. *Bozeman v. Chartis Cas. Co.*, Case No. 2:10–cv–102–FtM–36SPC, 2010 WL 4386826, *3–4 (M.D. Fla. Oct. 29, 2010).

Because Rule 45 subpoenas are subject to the same limitations as discovery under Rule 26, they cannot request materials protected by the attorney-client privilege and work product doctrine. "The attorney-client privilege applies to confidential communications made in the rendition of legal services to the client." Fla. Stat. § 90.502.[2] The attorney-client privilege must be construed narrowly to ensure it does not obstruct "the truth seeking process". *Indian Harbor Ins. Co.*, 295 F.R.D. at 583. Indeed, the privilege simply aims "to encourage clients to completely disclose information to their attorneys to allow for the rendition of competent legal advice and "thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

While the attorney-client privilege protects communications generated by clients seeking legal advice, the work product doctrine protects "materials prepared by the attorney, whether or not disclosed to the client, as well as materials prepared by agents for the attorney." *Fojtasek v. NCL (Bahamas) Ltd.*, 262 F.R.D. 650, 653 (S.D. Fla. 2009) (*citing In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979)). The doctrine does not protect all materials an attorney generates during the course of a representation. *Id*. Instead, the protection extends only to those materials prepared in anticipation of litigation. *See CSX Transp., Inc. v. Admiral Ins. Co.*, 1995 WL 855421, at *2 (M.D. Fla. July 20, 1995). "[T]he party asserting protection under the work product doctrine [is required] to demonstrate that the drafting entity anticipated litigation at the time the documents were drafted." *Ctr. for Individual Rights v. Chevaldina*, 16-

---

[2] Because this is a diversity action, Florida law controls Respondents' attorney-client privilege objections. *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 583 (S.D. Fla. 2013). The work-product objections, however, are governed by Federal common law. *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 593 (S.D. Fla. 2014)

20905-CIV, 2017 WL 5905191, at \*7 (S.D. Fla. Nov. 29, 2017).  "[M]aterials drafted in the ordinary course of business are not protected under the work product doctrine." *Id.* Indeed, this protection attaches only when "in light of the nature of the document and the ***factual situation in the particular case***, the document can fairly be said to have been prepared or ***obtained because of the prospect of litigation***." *In re: Engle Cases*, 309CV10000J32JBT, 2013 WL 12156576, at \*2 (M.D. Fla. June 28, 2013)(emphasis added).

Consistent with the broad scope of discovery permitted by the federal rules, the party asserting the privilege bears the burden of proof. *Rice v. Reliastar Life Ins. Co.*, No. 2:11-CV-548-FTM-29, 2011 WL 4596118, at \*4 (M.D. Fla. Oct. 3, 2011).  This "burden can be met only by an evidentiary showing based on competent evidence, and cannot be discharged by mere conclusory or *ipse dixit* assertions". *Id.*  The existence of the privilege must be proven ***by a preponderance of the evidence.*** *Chevaldina*, 2017 WL 5905191 at \*5.  While the privilege should be recognized when necessary to serve its underlying purposes, the privilege is not a favored evidentiary concept in the law since it serves to obscure the truth, and should be narrowly construed. *See United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. Fla. 1987).

If the subpoena seeks production of privileged materials, the Court may quash or modify the subpoena to prevent the disclosure of protected materials. Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv).  The Court may also quash or modify a subpoena if it requires "disclosing . . . commercial information." Fed. R. Civ. P. 45(d)(3)(B)(I).  Under such circumstances, the Court may also condition production on the parties ensuring all sensitive materials are properly protected. *Dish Network L.L.C. v. Fraifer*, 8:16-CV-2549-T-17TBM, 2017 WL 3701140, at \*4 (M.D. Fla. May 24, 2017)(denying motion for protective order and requiring that "[t]ruly sensitive information shall be treated as such. At the conclusion of all litigation, such records shall be destroyed or

9

returned to Defendants as agreed to by counsel."); *Narcoossee Acquisitions, LLC v. Kohl's Dept. Stores, Inc.,* 6:14-CV-203-ORL-41TB, 2014 WL 4279073, at *3 (M.D. Fla. Aug. 28, 2014)("For the reasons argued by Kohl's in its motion to seal, the Court finds that the subpoena seeks disclosure of confidential and possibly privileged information which should not be disclosed in the absence of a confidentiality agreement satisfactory to Ross and the parties.")

To preserve those protections, the respondent must assert objections that are "plain enough and specific enough so that the court can understand in what way the [discovery sought is] alleged to be objectionable." *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (citation omitted). The party whose privileged or protected materials are at issue must also timely object to the subpoena.  *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 697 (M.D. Fla. 2005); *see also Ravenswood Inv. Co., L.P. v. Avalon Corr. Servs., Inc.*, CIV-09-70-R, 2010 WL 11443364, at *2 (W.D. Okla. May 18, 2010)("Because Defendant did not state its claim of privilege within fourteen days of service of the subpoena on Cole & Reed, the Court concludes Defendant has waived any such claim."). Courts in the Eleventh Circuit have consistently rejected boilerplate objections and required litigants to raise specific objections in support of privilege claims. *See Steed v. EverHome Mortgage Co.*, 308 Fed. Appx. 364, 371 (11th Cir. 2009); *Guzman v. Irmadan, Inc.*, 249 F.R.D. 399 (S.D. Fla. 2008)("Generalized objections asserting 'confidentiality,' attorney-client privilege or work product doctrine . . . do not comply with local rules.").

In addition to asserting specific objections, the responding party must produce a privilege log identifying the documents withheld on the basis of the attorney-client privilege and work product doctrine. *Chevaldina*, 2017 WL 5905191, at *7.  The Local Rules for the Southern District of Florida provide, in pertinent part, that where a claim of privilege is asserted, the

objecting party must prepare "a privilege log with respect to all documents, electronically stored information, things and oral communications withheld on the basis of a claim of privilege or work product protection" except for "written and oral communications between a party and its counsel after commencement of the action and work product material created after commencement of the action." S.D. Fla. L.R. 26.1(e)(2)(C).

   **B.    *The subpoenas issued to Klohn, Stern, and Williams do not call for materials protected by the attorney-client privilege and work product doctrine.***

   The subpoenas Westgate served on Williams, Klohn, and Stern request (1) the deeds these lawyers prepared at Sussman's behest; (2) all communications and documents they exchange with Sussman regarding the quitclaim deeds; and (3) the communications with Sussman regarding the subpoenas at issue. Ex. 15. All three lawyers refused to produce the responsive documents and, to that end, asserted improper boilerplate objections claiming the documents were protected by the attorney-client privilege and work product doctrine.  Ex. 16. The Respondents also failed to produce a privilege log in support of the claims.

   The attorney-client privilege and work product objections are, not only improper boilerplate objections not substantiated by a privilege log, they are also unwarranted in light of the requests. *Chevaldina*, 2017 WL 5905191, at *7; *Shuman*, 762 F.2d at 1559.  Nothing in these requests asks for the disclosure of attorney-client communications generated in the course of securing legal advice.  Indeed, the requests call for documents and communications relating to the deeds that these Florida lawyers prepared at Sussman's direction.  *See* Ex. 15.  As Stern conceded during his deposition, the responsive documents are simply the deeds, emails regarding the preparation of deeds, and spreadsheets conveying information regarding the deeds.  Ex. 18, Stern Dep. 20:5-17 (Nov. 21, 2018).

These documents do not reflect privileged information.  They simply convey the addresses and names of the grantors and grantees to each transaction.  *Id.*  Neither the attorney-client privilege nor the work product doctrine protects those facts. *See In re Denture Cream Prod. Liab. Litig.,* No. 09-2051-MD, 2012 WL 5057844, at *7 (S.D. Fla. Oct. 18, 2012)(finding that the work product doctrine protects an attorney's mental impressions, legal theories and subjective evaluations, ***but does not protect the underlying facts*** contained in documents prepared in anticipation of litigation); *Falin v. Condo. Ass'n of La Mer Estates, Inc.,* 11-61903-CIV, 2012 WL 13005975, at *2 (S.D. Fla. Mar. 1, 2012).

Respondents' work product objections are also defeated by their own deposition testimony.  Even though he asserted the productions of the work product doctrine, during his deposition Klohn conceded that this objection was not based, as required, on any ascertainable facts supporting a reasonable belief that litigation was anticipated.  *In re: Engle Cases*, 2013 WL 12156576, at *2.

> Q.   What litigation did you anticipate for which you are asserting a work-product exemption of privilege?
>
> A.   As an attorney, you always anticipate something may happen and someone may want to litigate. Nothing specific in mind.
>
> Q.   What types of documents are you withholding based on the work-product exemption or privilege?
>
> A.   I would say they would be almost exclusively ·e-mails and drafts of deeds.

Ex. 19, Klohn Dep. 19:7-16.  Stern, on the other hand, conceded that he did not anticipate litigation at the time he was preparing the deeds.

> Q.   With respect to the deeds that you prepared at Sussman's behest, you've also asserted that those deeds are work product, correct?
>
> A.   Correct.

12

> Q.     What litigation was anticipated when those deeds were prepared?
>
> A.     Possible joint responsibility.
>
> Q.     When you prepared the deeds for Mr. Sussman, did you anticipate litigation in any way?
>
> A.     No.

Ex. 18, Stern Dep. 16:8-17.  Stern and Klohn failed to adduce competent evidence in support of their work product objections. *Chevaldina*, 2017 WL 5905191, at *5.  Instead, their testimony proves that the documents do not reflect "the attorney's evaluation of the client's case and that are generated in anticipation of litigation." *Essex Builders Grp., Inc. v. Amerisure Ins. Co*., 6:04-CV-1838-ORL-22, 2006 WL 1733857, at *2 (M.D. Fla. June 20, 2006).  Because Klohn and Stern did not anticipate litigation at the time they prepared the deeds, the objections must be overruled.

Respondents have also failed to carry their burden of proving that the attorney-client privilege attaches to any of the responsive documents.  *Rice v. Reliastar Life Ins. Co.*, No. 2:11-cv-548-FtM-29SPC, 2011 WL 4596118, at *4 (M.D. Fla. Oct. 3, 2011). The responsive communications do not convey information disclosed by a client for the purposes of securing legal advice, which is what the privilege protects.  Fla. Stat. §90.052.  Instead, they simply convey the information Sussman provided to the Respondents to be used in the preparation of the deeds as well as the Florida lawyer's objections regarding the fraudulent quitclaim deeds.  Ex. 18, Stern 20:5-17.  The responsive deeds and communications obtained to date reflect only facts relating the underlying transaction as well as the concerns raised by the Florida attorneys who became suspicious of Sussman's practices. *See* Exs. 6,12-13.  Understandably, Sussman wants to avoid the production of the documents that will prove how he duped Florida attorneys into following his fraudulent practices.  But, neither the attorney-client privilege nor the work product

doctrine can assist Sussman in reaching this goal. Indeed, the Magistrate Judge already overruled the privilege claims. Ex. 3.

Remarkably, Klohn and Stern refused to answer deposition questions regarding their communications with Sussman regarding the Underlying Litigation and the subject subpoenas. *See* Ex. 19, Klohn Dep. 23:2-19 (emphasis added); Ex. 18, Stern Dep. 11:25, 12:1-3. Based on the same objections, Klohn, Williams, and Stern refused to produce documents reflecting those communications. Ex. 16. These objections are frivolous. First, there is no basis upon which to claim that any communications or documents regarding the subpoena and the Underlying Lawsuit reflect an attorney's mental impressions regarding the pending litigation. Klohn and Stern admitted that they were not represented by Sussman or his counsel for purposes of the deposition or the subpoena. Ex. 18, Stern Dep. 12:14-23; Ex. 19, Klohn Dep. 23:16-19. Second, absent an attorney-client relationship, there is no basis to invoke the attorney-client privilege. *See* Fla. Stat. § 90.502. If Sussman or his lawyer disclosed protected work product to Respondents regarding the Underlying Litigation, then they waived any applicable privilege. *See Hurley v. Kent of Naples, Inc.*, 210CV334FTM29SPC, 2011 WL 13141481, at *1 (M.D. Fla. July 28, 2011).

**C. The subpoena issued to Jessica Most does not call for confidential or sensitive materials.**

After deposing Klohn and Stern, Westgate issued a document subpoena to Jessica Most—one of the Florida-licensed attorneys who Sussman hired to prepare quitclaim deeds. Sussman did not object to the subpoena. While Klohn, Stern, and Williams objected to the subpoenas based on implausible privilege claims, Most withheld the responsive documents based on the confidentiality provision included in the Local Lawyer Agreement. Ex. 17, Ex. 11, ¶ 11. That objection does not extinguish Most's responsibility to produce all responsive records. Here,

14

the subpoena served on Most does not call for the production of any confidential or sensitive materials as it only requests production of documents relating to the quitclaim deeds that she prepared at Sussman's behest.  Those deeds were to become or actually became public record, which by definition are not confidential.  Ex. 20.

In addition, the communications that Sussman exchanged with these Florida lawyers typically contain the information Sussman provided to them for purposes of preparing deeds. Ex. 21.  They also reflect the concerns that the Florida lawyers expressed regarding Sussman's practices.  *See* Ex. 12.  While it is understandable that Sussman wants to prevent the disclosure of such incriminating evidence, that information is not confidential. Even assuming the documents were sensitive, the Court should compel their production subject to the confidentiality stipulation that already governs all discovery in this case. Ex. 23; *see e.g. Kohl's Dept. Stores, Inc.,* 2014 WL 4279073 at *3.

### D.    In the alternative, the Court may transfer this Motion to the United States District Court for the Middle District of Florida for resolution.

Pursuant to Rule 45(f), this Court may transfer this subpoena-related Motion to the issuing court upon finding "exceptional circumstances."  While the main concern is protecting the local nonparties from further burdens, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already rule on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* advisory committee's notes.

Whether the issuing court is in a superior position to address the subpoena-related motions depends on a variety of factors, including "complexity, procedural posture, duration of pendency, and the nature of the issues before, or already resolved by, the issuing court in the underlying litigation." *Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 307 F.R.D. 30, 35 (D.D.C.

2014)(transferring motion to quash subpoena where the underlying litigation had been pending for four years and had involved "innumerable discovery disputes"); *see also Duck v. United States Sec. & Exch. Comm'n*, 317 F.R.D. 321, 325 (D.D.C. 2016) ("The Court also notes that transfer is appropriate where transfer would avoid interference with a time-sensitive discovery schedule issued in the underlying action.").

The exceptional circumstances must outweigh the interests of the nonparty served with the subpoena "in obtaining local resolution of the motion." *Google, Inc. v. Digital Citizens All.*, MC 15-00707 JEB/DAR, 2015 WL 4930979, at *4 (D.D.C. July 31, 2015). District courts are encouraged to "permit telecommunications methods to minimize the burden the transfer imposes on nonparties." Rule 45, advisory committee notes; *see e.g., In re S&D Powersports*, 5:17-MC-00099, 2017 WL 3670972, at *2 (W.D. Ark. Aug. 25, 2017) (transferring subpoena-related motion because the documents sought related to an expert's opinion that was subject to a Daubert motion filed in the underlying litigation and the burden on the nonparty could be addressed through the use of technology); *Google, Inc*., 2015 WL 4930979 at *4 (noting that the use of telecommunications is an adequate means to avoid undue burden on the nonparties).

Here, exceptional circumstances warrant transferring this Motion to the Middle District of Florida.  First, the Middle District has already addressed and overruled Sussman's privilege objections regarding the documents responsive to the subpoenas.  Ex. 3.  Second, Sussman's failure to produce the responsive documents is the subject of a pending Motion for Sanctions. Ex. 23. Lastly, discovery closes in less than one month.  As such, a Court intimately familiar with the Underlying Litigation may more expediently adjudicate the issues in this Motion.

## CONCLUSION

Respondents have no legal basis to withhold the documents responsive to the subpoenas. The deeds and related documentation do not convey legal advice and were not prepared in anticipation of litigation. Instead, the documents relate solely to the deeds and fraudulent tactics that are at issue in this case. This information is neither privileged nor confidential. Khlon and Stern also had no legal basis upon which to refuse to answer deposition requests regarding their communications with Sussman about the Underlying Litigation and the subject subpoenas. The Court should, therefore, grant this Motion to Compel and require (1) Klohn, Sterns, Williams, and Most to produce all responsive documents; (2) and compels Klohn and Stern to testify about their communications with Sussman regarding the subject subpoena and Underlying Litigation.

## REQUEST FOR HEARING

Westgate, pursuant to Local Rule 7.1(b)(2), respectfully move this Court for an Order permitting oral argument on Plaintiffs' Motion to Compel Compliance with Subpoenas and Overrule Privilege and Confidentiality Objections. As grounds for this request, Plaintiffs state that Plaintiffs' Motion raises substantial issues of law and fact, including the procedural history and rulings in the Underlying Litigation. As such that oral argument, with the opportunity for the Court to pose to counsel questions that may arise from the parties' briefing of Plaintiffs' Motion, will substantially benefit the Court in its analysis and consideration of the Motion.

Dated: December 5, 2018                        Respectfully submitted,

                                                GREENSPOON MARDER LLP

                                                 _/s/ Jeffrey A. Backman_____
                                                RICHARD W. EPSTEIN (FL Bar No. 229091)
                                                richard.epstein@gmlaw.com
                                                JEFFREY A. BACKMAN (FL Bar No. 662501)
                                                jeffrey.backman@gmlaw.com

200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954.491.1120
Facsimile: 954.343.6958
*Counsel for Petitioners*

## GOOD FAITH CONFERENCE CERTIFICATION

Pursuant to Local Rule 3.01(g) counsel for Petitioners conferred with the Respondents. Specifically, on November 5, 2018 and November 21, 2018, counsel for Petitioners deposed Respondents Klohn and Stern. During their depositions, Klohn and Stern stood by their attorney-client privilege and attorney work-product objections. *See* Exs. 18-19. Similarly, on November 27, 2018, Counsel for Petitioners discussed the subpoena responses with Jessica Most and this Motion to Compel.  During these conversations, Ms. Most affirmed that she stood by her objections and did not object to transfer of the Motion to the Middle District of Florida.  Ex. 24. Lastly, on December 4, 2018 and December 5, 2018, counsel for Petitioners conferred with Summer Williams regarding her response to the subject subpoena.  During this conference, Williams advised that she would not withdraw her attorney-client privilege and attorney work product objections.

      */s/ Jeffrey A. Backman*
JEFFREY A. BACKMAN

18