# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT FLORIDA
## ORLANDO DIVISION

WESTGATE RESORTS, LTD., a Florida limited partnership, by and through its general partner WESTGATE RESORTS, INC., a Florida corporation, et al.,

CASE NO.: 6:17-CV-01467-RBD-DCI

                Plaintiffs,

vs.

MITCHELL REED SUSSMAN, an individual, and MITCHELL REED SUSSMAN & ASSOCIATES, a Law Firm,

                Defendants.

_____/

## PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS FOR REFUSAL TO COMPLY WITH DISCOVERY ORDERS [DE 60, 62, AND 80] OR, IN THE ALTERNATIVE, TO COMPEL PRODUCTION FROM DEFENDANTS

Pursuant to Fed. R. Civ. P 37(b), Local Rule 3.04, and the Court's inherent authority, Plaintiffs Westgate Resorts, Ltd. and Westgate Resorts, Inc. et al. ("Plaintiffs") file this Motion for Discovery Sanctions ("Motion") requesting entry of an order that (1) strikes Defendants' Answer and Affirmative Defenses to the Amended Complaint [DE 41]; or (2) bars Defendants from denying that they instructed Timeshare Clients to default on their contracts and knowingly recorded fraudulent deeds; or (3) compels Defendants to produce all documents within their possession, custody or control that are responsive to the First Request for Production within 5 days of the entry of an Order on this Motion; and (4) requires Defendants to submit to a second deposition to address documents not previously produced, in violation of this Court's Orders; (5) requires Defendants to submit a declaration describing the search conducted for responsive records and whether they have reason to believe responsive documents exist; (6) sanctions

Defendants in the amount of the fees Plaintiffs reasonably incurred in having to file this Motion; and (7) awards further relief the Court deems just and proper.

## INTRODUCTION

For the past year, lawyer Mitchell Reed Sussman ("Sussman") and his law firm Mitchell Reed Sussman & Associates ("Law Firm") have refused to produce the documents that will reveal the nefarious, fraudulent practices they employed to interfere with Westgate's contractual and advantageous business relationships. After initially asserting that the requested evidence was privileged and beyond the scope of discovery, Defendants now disavow being in control of the records that will prove Plaintiffs' claims. To justify this swift change in position, Sussman cites to a recently-revealed computer crash and lax record-keeping practices as the culprit of the discovery deficiencies that prompted Plaintiffs' first and second motions to compel.

The records obtained to date coupled with Sussman's deposition testimony prove that, even assuming a computer crash occurred, Defendants have blatantly failed to comply with their obligation to produce all responsive documents within their possession, custody or control – as previously ordered by this Court. For instance, despite two motions to compel and Orders granting those motions, Defendants failed to produce the financial records that will reveal the millions of dollars in profits they earned from defrauding Plaintiffs and Timeshare Clients alike. Sussman and his Law Firm also deliberately withheld the e-mails that were plainly responsive to the First Request for Production that would show the work that he and his staff perform on behalf of Timeshare Clients. But, Sussman's most reprehensible discovery violation is his steadfast refusal to produce the records held by his staff, including the hundreds of fraudulent deeds that purport to transfer timeshare interests back to Westgate or to straw owners. These discovery violations are incomprehensible in light of Sussman's representations that he had

produced the documents requested in Westgate's first and second motion to compel. Less than two months remain before the close of discovery and, despite two motions to compel, two court orders, and monetary sanctions, Sussman has not relented. Sanctions are warranted.

## **MEMORANDUM OF LAW**

### I.     FACTS AND PROCEDURAL HISTORY

Sussman tortiously interferes with the contractual and advantageous business relationships that Westgate—at incalculable financial expense—develops with owners of timeshare interest ("Timeshare Clients"). To cause Timeshare Clients to default on their contractual obligation, Sussman mails baseless demand letters to Westgate advising that the Timeshare Client is "resigning" from ownership based on unspecified claims of fraud and inapposite legal authorities. Ex. 1. In these letters, Sussman asserts to be the legal representative of the Timeshare Client and demands that Westgate cease all direct communication with his so-called client. As part of his ploy, Sussman also induces Timeshare Clients to execute fraudulent quitclaim deeds purporting to convey Westgate Owners' timeshare interests back to Westgate (without Westgate's knowledge or acceptance) or transferring title to an individual ("straw man") or company ("Viking ship") Sussman knows will not pay the obligations owed to Westgate. Ex. 2.

Despite knowing that neither the fraudulent deeds nor the baseless demand letters can terminate the contractual obligations to Timeshare Clients assumed, Sussman allows these customers to believe they have actually been released. The defrauded Timeshare Clients rely on Sussman's advice and stop meeting their obligations to Westgate only to be met with ruined credit scores, foreclosures, and deficiency judgments. Despite claiming to be the legal

3

representative of these Timeshare Clients, Sussman delegates the representation to non-legal staff that he barely supervises. Ex. 3-4, Sussman Dep. 191:8-15 (Oct. 3, 2018).

To conceal the evidence of this fraud, Sussman has repeatedly stonewalled discovery. First, on February 19, 2018, Sussman served deficient responses to Westgate's First Request for Production along with a 294-page initial production. Sussman's initial production consisted of a 240-page client list that was not produced in native format and was not readable as a result. The remaining 54 pages consisted of agreements and correspondence that Sussman redacted to allegedly protect privileged and confidential information. On June 11, 2018, the Court overruled Sussman's boilerplate objections and ordered Defendants to produce all responsive documents and, if appropriate, a privilege log in support of any attorney-client and work product claims. DE 60. Upon Sussman's request, the Court extended the response deadline up to August 1, 2018 and warned that no further extensions would be granted. DE 62.

On July 3, 2018, Sussman served deficient supplemental responses and a redacted privilege log listing 520 allegedly privileged documents. DE 71-9, 71-4. After fruitless meet and confers, Westgate filed a second motion to compel, which the Court granted overruling Sussman's unsubstantiated privilege claims over those documents sent to third-parties. DE 71. The Court also ruled that claims of privilege not asserted through the prior served privilege log had been waived. DE 80, at 2. Based on the Court's Order, on October 1, 2018, Sussman produced 470 of the 520 documents listed on the privilege log. Ex. 3-4, Sussman Dep. 265:12-25; 266:1-4. The production consisted of (i) 73 quitclaim deeds Sussman recorded on behalf of Timeshare Clients; (ii) 45 transaction documents relating to 36 Timeshare Clients represented by Sussman; (iii) 38 letters Sussman sent to Timeshare Clients advising them that they had been released from their timeshare contracts; (iv) 238 demand letters Sussman sent to Plaintiffs; (v) 11

letters in which Sussman withdrew his representation of Timeshare Clients; and (vi) 10 documents Sussman exchanged with third-party timeshare exit companies regarding services rendered to Timeshare Clients. Along with this production, Sussman served amended supplemental responses to Westgate's First Request for Production. Ex. 5, Defs' Am. Supp. Resp. Plfs' Req. for Prod (Oct. 1, 2018). In the supplemental responses, Sussman asserted that he had produced every document responsive to the First Request for Production. On that basis, Westgate proceeded to depose Sussman on October 3, 2018.

During his deposition, Sussman described himself as a real estate lawyer whose law practice includes timeshare cancellation services. His main office is located in Palm Springs, CA and has offices in Newport Beach and Beverly Hills that are run by his "associates." Ex. 3-4, Sussman Dep. 10:9-21. These "associates" are legal and non-legal personnel who assist Sussman in providing legal services, including those relating to timeshare cancellations. *Id.* at 222:17-19. Timeshare Clients can retain Sussman directly by executing a retainer agreement and paying between $950 and $1,500 fee via check. *Id.* at 178-179. Many Timeshare Clients, however, are referred to Sussman by third-party exit companies. Those Timeshare Clients do not execute Sussman's retainer agreement and, instead, deal directly with the third-party exit company who pays Sussman between $500 to $750, per customer. *Id.* at 178:13-15.

After Sussman and his Law Firm undertake the representation, Sussman conducts an "initial analysis" and then his "associates" execute the strategy that will allegedly terminate the timeshare contract. *Id.* at 117:1-5. This strategy consists simply of (1) issuing baseless demand letters; (2) recording quitclaim deeds that purport to transfer the timeshare interest to one of Sussman's cash-strapped associates; or (3) recording quitclaim deeds that purports to transfer the timeshare interest back to Westgate. *Id.* at 90:20-23; 96:11-16; 172:13-16. Sussman staff issues

the demands letters based on form documents that Sussman previously prepared. *Id.* at 50:7-25; 51:1-9. Sussman hires local lawyers to prepare the quitclaim deeds based on information provided by Sussman's associates. *Id.* at 131:12-14. After they prepare the quitclaim deeds, the local lawyers send the deeds to Sussman's staff who obtain the signatures required to finalize the deed and afterwards are also responsible for recording the instruments. *Id.* at 275: 3-12. Because he earns such a "small fee" from each representation, Sussman does not conduct any of this work himself and completely relies on his "associates" to execute the strategy he masterminded. *Id.* at 191:8-14.

During the deposition, Sussman made clear while under oath that he had not, in fact, produced all responsive documents. *Id.* at 30:4-20. Sussman admitted, for example, that he did not produce responsive emails, bank accounts, or documents held by his staff. *Id.* at 64:1-7; 66:13-20; 168:6-12. And, perhaps most reprehensibly, Sussman failed to properly search the paper and electronic records within his possession, custody or control. *Id.* at 25-26; 31:2-5. Based on these discovery deficiencies, on October 28, 2019, counsel for Westgate's counsel mailed Sussman's counsel a seven-page letter outlining the deficiencies in the responses to the First Request for Production and requesting that Sussman supplement his production by November 8, 2018. Ex. 6.

On November 8, 2018, the parties met and conferred regarding Defendants' deficient discovery. During that conference, counsel for Sussman advised that they needed additional time to address the discovery deficiencies. Because less than two months remain before the close of discovery and these deficiencies involve issues that have been now twice briefed before this Court, Westgate could not accommodate Sussman's request for a further extension. That afternoon, Defendants produced a minimal amount of additional documents allegedly responsive

to the Second Request for Production. That production does not come close to remedying Defendants' deficient response to the First Request for Production – but it does demonstrate that Sussman and his counsel made misrepresentations concerning their supposed compliance with the Court's prior Orders.

## II.   APPLICABLE LAW

"The purpose of discovery is to require disclosure of relevant information so that the resolution of the civil action is based upon a full and accurate understanding of the facts." *Lesti v. Wells Fargo Bank NA*, 297 F.R.D. 665, 666 (M.D. Fla. 2014). Requests to produce can be direct to any document or thing in the possession, custody, or control of the opposing party. Fed. R. Civ. P. 34 (a)(1). The responding party cannot furnish only that information within its immediate knowledge or possession. *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992)(citations omitted). Instead, that party has an affirmative obligation to seek and produce "information reasonably available to him from his employees, agents, or others subject to his control." *Id.*

Federal courts interpret the term "control" broadly and do not require that the responding party "have legal ownership or actual physical possession of the documents at issue." *Costa v. Kerzner Intern. Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. 2011). Instead, for discovery purposes, litigants are in "control" of the documents they have the "right, authority, or practical ability to obtain . . . on demand." *Id.* (citing *Desoto Health & Rehab, L.L.C. v. Philadelphia Indem. Ins. Co.*, 2:09-CV-599-FTM-99S, 2010 WL 4853891, at *3 (M.D. Fla. Nov. 22, 2010) (compelling production based upon fining of "sufficient nexus" between plaintiffs and nonparty); *see also Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Under Fed. R. Civ. P. 34,

control is the test with regard to the production of documents. Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand.").

Courts consider a variety of factors in determining whether the a party has control over records held by a nonparty, including (1) the nonparty's connection to the transaction at issue in the litigation; (2) the degree to which the nonparty will benefit from the outcome of the case; and (3) whether the entities exchange documents in the ordinary course of business. *Costa*, 277 F.R.D. at 470-471; *In re Takata Airbag Prods. Liab. Litig.*, 15-02599-MD, 2017 WL 8812733, at *3 (S.D. Fla. Feb. 16, 2017) ("*Costa* merely identified specific evidentiary factors that could be used to evaluate "control" under the *Searock* standard."). "These considerations, which focus on the degree of closeness between the respective entities, essentially justify the finding of the requisite 'control' on principles of agency and the alter ego doctrine." *Silver v. Tenet Health Care Corp.*, 09-80365-CIV, 2010 WL 11444064, at *4 (S.D. Fla. Aug. 6, 2010). Accordingly, for purposes of discovery, litigants are deemed to have "control" over those current and former employees they continue to compensate. *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977). As such, litigants have an obligation to contact former employees who may have responsive documents. *Selectica, Inc. v. Novatus, Inc.*, 6:13-CV-1708-ORL-40, 2015 WL 1125051, at *5 (M.D. Fla. Mar. 12, 2015).

Because control focuses on the closeness of the relationship between the non-party and the litigant, the requisite level of control can arise from a contractual provision or a statutory obligation. *F.T.C. v. Sterling Precious Metals, LLC*, 12-80597-CIV, 2013 WL 1442180, at *8 (S.D. Fla. Apr. 9, 2013)(compelling production of documents held by the defendant's website host); *Flagg v. City of Detroit*, 252 F.R.D. 346, 355 (E.D. Mich. 2008)(finding that contractual confidentiality provision that prohibited disclosure of documents constituted "acknowledged

power" that "constitutes 'control' within the meaning of Rule 34(a)(1)"); *Tomlinson v. El Paso Corp.*, 245 F.R.D. 474, 477 (D. Colo. 2007)(finding that statutory record keeping obligations granted employer "control" over data held by third-party pension administrator).

In assessing the requisite level of control, courts should "closely examine" the relationship between the parties to ward of "sharp practices, inequitable conduct, or other false and misleading actions" meant to obscure the search for truth that is the basis of our legal system. *Uniden Am. Corp. v. Ericsson Inc.*, 181 F.R.D. 302, 306 (M.D.N.C. 1998). Indeed, "[t]he withholding of evidence 'substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation.'" *Freddie v. Marten Transport, Ltd.*, 428 F. App'x 801, 804 (10th Cir. 2011). Under such circumstances, the requesting party is "forced either to attempt independent corroboration of each submission, at substantial expense of time or money, or to accept the possibility that every document or statement submitted by [Defendant] is incomplete or inaccurate." *Id.* (internal quotation omitted).

## III.    FIRST REQUEST FOR PRODUCTION

**RFP 1 (narrowed/revised):** Documents relating to Sussman's provision of services to Timeshare Share Clients. We will agree to revise the definition of "Timeshare Clients" for this request to the following: "Timeshare Clients means client(s) who retained You in connection with terminating, cancelling, or otherwise altering their contract with any of the Plaintiffs."

**SUPP. RESPONSE:** Produced. [1]

Defendants' discovery response is improper as it fails to identify the documents that are responsive to this request. *Gutescu v. Carey Intern., Inc.*, 01-4026 CIV, 2003 WL 25589035, at *4 (S.D. Fla. June 24, 2003). In addition, neither the October nor the November production are fully responsive to this request. Sussman has refused to produce documents essential to

---

[1]   A list of the requests at issue in this Motion and the corresponding responses are attached hereto as Ex. 7.

Plaintiffs' claims including (1) the documents that Sussman evaluated during his "initial analysis" of a case; (2) Defendants' communications with Timeshare Clients; (3) Defendants' communications with the local lawyers they hired to prepare quitclaim deeds; (4) the deeds Defendants' recorded on behalf of Timeshare Clients; (5) the local counsel agreements identifying the Florida lawyers that Sussman hired to prepare quitclaim deeds; (6) the financial records that will establish the income earned by the Sussman associates who performed work on behalf of Timeshare Clients.

Sussman's contention that he has produced all documents responsive to this request is contradicted by the scant production that does not address the 419 Timeshare Clients at issue in this case. In addition, the public records for Orange County, FL alone show dozens of quitclaim deeds excluded from Defendants' production. Ex. 8. Not only did Defendants fail to produce the deeds, they have also concealed the identity of the Florida lawyers they have retained to prepare quitclaim deeds. Indeed, only after canvassing the public records did Westgate identify many of the local lawyers at issue in this case, including Jessica Most. Ex. 9.

Because Sussman has deliberately stonewalled discovery, Westgate has issued subpoenas in an attempt to obtain evidence directly from the local lawyers that prepared the quitclaim deeds that are at issue in this case. The local lawyers, however, refuse to testify or produce records citing meritless privilege objections that Sussman ordered them to assert. *See* Ex. 10, composite of Stern, Klohn, and Williams Subpoena Responses; *see also* Ex. 11, M. Durieux e-mail to G. Ortega (10/26/2018). And, in what constitutes nothing less than witness tampering, Sussman has threatened some of these lawyers with litigation should they testify truthfully in this case. *Quiroz v. Superior Bldg. Maint., Inc.*, 06-21594-CIV, 2008 WL 3540599, at *8 (S.D. Fla. Aug. 12, 2008) ("This Court finds that monetary sanctions fail to address the severity of Mr. Quiroz's

acts of witness tampering and perjury, which threaten the public's trust in our system of justice and disparage the core values for which it stands."). Perhaps for the same reason, Sussman's associates have absconded to avoid service of process and, even if properly served, fail to appear for deposition. *See* Ex. 12 and 13.

Sussman must also be compelled to conduct a proper search of his own emails and electronic files. The cursory inspection Sussman described during his deposition—which was limited to a search bearing the word "Westgate"—falls below the "reasonableness" standard required to comply with Rule 34. *Compare* Ex. 3-4, Sussman Dep. 31:2-8, *with Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000)(compelling search of electronic files based on relevant search terms). Not only did Sussman fail to diligently search the records within his control, he also deliberately chose to exclude critical responsive documents, which include the e-mails memorializing the work the Law Firm conducted on behalf of Timeshare Clients. Ex. 3-4, Sussman Dep. 64:1-14. Those documents are squarely responsive to this request and must be produced.

> **RFP 2 (narrowed/revised):** All documents identifying and/or relating to your employees who provide services to Timeshare Clients, including Timeshare Clients who were members of or had contracts with any of the Plaintiffs. We will agree to revise the definition of "Timeshare Clients" for this request to the following: "Timeshare Clients means client(s) who retained You in connection with terminating, cancelling, or otherwise altering their contract with any of the Plaintiffs."

> **SUPP. RESPONSE:** Defendants have no employees.

Defendants have refused to produce responsive documents based on the disingenuous contention that they have no "employees." Defendants' position is unreasonable in light of the motions to compel, which make clear that this request seeks documents that will memorialize the work that Sussman and his Law Firm performed for Timeshare Clients. Defendants' position

avoids the "fair reading" this Circuit has always given to discovery requests. *Harduvel v. Gen. Dynamics Corp.*, 801 F. Supp. 597, 608 (M.D. Fla. 1992). In response to this request, Sussman must search and produce the records held by his staff, which he has blatantly failed to do.

It is undisputed that Sussman hires legal and non-legal personnel to perform work on behalf of Timeshare Clients and whether *he* considers them "independent contractors" or regular "employees" is immaterial to Westgate. Ex. 3-4, Sussman Dep. 187-188; 222:11-19 ("Q. You refer to your firm as Mitchell Reed Sussman & Associates, correct? A. Correct. . . . . Q. When you're referring to the word "associates," who is it that you're referring to? A. The ongoing list of people that assist me."); 20:18-20 ("I only have 1099 independent contractors. That was something that I established when I first got out of law school and could not afford a secretary."); 21:4-6 (testifying that he has always prepared 1099 for each independent contractor). Sussman relies on these "associates" to execute the strategy Defendants devise after an "initial analysis" of the case. *Id.* at 117-118. Their functions include preparing the baseless demand letters and recording the fraudulent deeds that are at the center of Plaintiffs' tortious interference claims. *Id.* at 191:8-14; 346:4-16. They also communicate with the Florida lawyers Sussman hires to prepare quitclaim deeds and. Ex. 14, M. Sussman email to W. Williams (7/31/2018).[2]

Because these associates execute the strategy Sussman devises based upon an "initial analysis" of the case, Defendants' claim that they have produced all documents responsive to the First Request for production is perjurious. Ex. 3-4, Sussman Dep. 30: 9-20; 117-118. Sussman's production contains no documents or communications regarding 25 quitclaim deeds his Law Firm recently recorded in Orange County, FL. Ex. 8. The deeds were prepared by Florida

---

[2] The non-legal personnel that assists Sussman and his Law Firm are Yanni Buckley, Steve Peyton, Leslie Benjamin, Raul Martinez, Jeffrey Murphy, Andrewa Estrada, J. Alex Gomez, Tom Stanford, Terry Durst, Fawn Weaver, Terry Dust, Miriam Goldstein, Evan Laird, Jeffrey Corcoran, A.J. Underwood, and James Sibila. Ex. 3-4, Sussman Dep. 305-306.

lawyers James Klohn and Daniel Stern upon the instruction of Sussman and recorded by the Law Firm's staff. Ex. 3-4, Sussman Dep. 255:3-6 ("Q. And would one of your associates be sending Mr. Klohn e-mails with the various information required for him to be able to prepare and record those deeds? A. Correct."); *see* Ex.15, Local Counsel Agreement, ¶ 1 (e) (establishing that the Law Firm recorded the deeds). Even though these deeds were recently recorded, Sussman did not produce the documents he reviewed or prepared relating to these 25 quitclaim deeds all the while falsely claiming under oath that all responsive documents had been produced. Ex. 3-4, Sussman Dep. 30:4-20. Sussman's 2016 computer crash does not excuse Sussman's failure to produce documents and communications relating to these 2018 deeds.

Leaving Sussman's false statement under oath for another day, it cannot be seriously contended that Sussman does not have control over the documents held by his staff—as he implied during the deposition. *Id*. at 191: 8-14. First, these individuals continue to receive compensation from Sussman and carryout his business functions, which includes preparing and mailing demand letter under the Law Firm's letterhead. *In re Folding Carton Antitrust Litig*., 76 F.R.D. at 423. Second, at least one of these staff members have already agreed to produce responsive documents in his possession. *Id*. at 29:13-23 (testifying that staff member Jeff Murphy provided some of the documents produced in discovery). Third, Sussman and his Law Firm also have the right to obtain materials from their legal and non-legal personnel given the oversight they must exercise on behalf of their clients. *See* CA R. Prof'l Cond. 5.3 (b) ("A lawyer having direct supervisory authority over the nonlawyer, whether or not an employee of the same law firm, shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."); *id*. 5.1 (b) ("A lawyer having direct supervisory authority over another lawyer, whether or not a member or employee of the

same law firm, shall make reasonable efforts to ensure that the other lawyer complies with these rules and the State Bar Act."); Restatement (Third) of Law Governing Lawyers (2000) § 46 ("On request, a lawyer must allow a client or former client to inspect and copy any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse. "The party seeking production of documents bears the burden of demonstrating that the other party has control over the documents sought.").

Sussman has also refused to produce documents relating to two of the "associates" that are central to this case: Tom Stanford and Jose Alex Gomez. Since at least 2015, Gomez has been heavily involved in Sussman's timeshare practice. Not only was Gomez leading the effort of preparing the fraudulent quitclaim deeds that are at issue in this case, but he was also one of the straw owners that acquired timeshare interests often solely to later default on his contractual obligations. *See* Ex. 14 and 16. Stanford also worked for Sussman for years and benefited from the fraudulent deeds Sussman recorded. Ex. 17. Even though Gomez and Stanford were Sussman's "associates" until just a month before this lawsuit was filed, Sussman did not contact either of them to request records responsive to Westgate's requests. Ex. 3-4, Sussman Dep. 29:11-23. Sussman's discovery obligations require that he attempt to contact these (and all other) current and former associates to obtain documents responsive to Westgate's requests. *Novatus, Inc.*, 2015 WL 1125051 at 5; Ex. 3-4, Sussman Dep. at 165:14-25, 166:1-13. Sussman has also failed to produce the checks, invoices, and 1099 Misc Forms that memorialize the payments Defendants issued to each and every one of the legal and non-legal personnel they hired to conduct work on behalf of Timeshare Clients, which Sussman described as the "associates" identified in his Law Firm's name. Sussman and his Law Firm have a right to

demand their banking and tax records. *See De Armas v. Miabraz*, LLC, 12-20063-CIV, 2012 WL

13014669, at *1 (S.D. Fla. Aug. 23, 2012).

> **RFP 3:** All Documents relating to advertisements that you created, approved, or posted on any medium—including, but not limited to, websites, mailings, television, and radio—for the purpose of soliciting Timeshare Clients to retain you.

> **SUPP. RESPONSE:** Defendants do no advertising.

> **RFP 13:** All Documents relating to your marketing efforts through Internet search engines, including but not limited to the purchase of web advertisements and search engine optimization, for the purpose of soliciting Timeshare Clients to retain you.

> **SUPP. RESPONSE:** Defendants do not solicitation or web optimization. Defendant, Mitchell Reed Sussman is listed on all major attorney online directories including lawyers.com, nolo.com, avvo.com, and the like. No Documents relating to internet search and engines, web advertisements, or search engine optimization exist.

> **RFP 14:** All Documents relating to the purchase of on-line advertisements and on-line referrals by you for the purpose of soliciting Timeshare Clients to retain you.

> **SUPP. RESPONSE:** Defendants do not solicitation or web optimization. Defendant, Mitchell Reed Sussman is listed on all major attorney online directories including lawyers.com, nolo.com, avvo.com, and the like. No Documents relating to internet search and engines, web advertisements, or search engine optimization exist.

Westgate demands that Defendants produce copies of their websites, YouTube videos,

Facebook profile, attorney directories, and other advertising efforts. Defendants have failed to

respond to these requests claiming they conduct no "solicitation" or "advertising." To justify this

claim, Defendants have adopted a narrow interpretation of our request and define online

advertising as a "marketing strategy that involves the use of the Internet as a medium to obtain

website traffic and target and deliver marketing messages to the right customers." Ex. 18.

Defendants, again, attempt to skirt their discovery obligations by engaging in "hyper-technical

word games" that are beneath the dignity of this Court. *Donahay v. Palm Beach Tours & Transp., Inc*., 242 F.R.D. 685, 688 (S.D. Fla. 2007)

Plaintiffs reject the narrow definition of "advertising" that Defendants have adopted. A fair reading of these requests calls for the production of all materials they, or someone at their direction, created, approved, or posted—on any medium—to promote Sussman's timeshare termination services. *See* Merriam – Webster http://www.merriam-webster.com/dictionary/advertising (last visited Nov. 11, 2018) (defining advertising as "the action of calling something to the attention of the public especially by paid announcements"). The responsive records include those documents that relate to Timeshare Legal Action's Facebook page, which Sussman personally manages. Ex. 3-4, Sussman Dep. 221:7-14. Defendants must also produce all responsive records held by their website manager, LiveWebMedia. During his deposition, Sussman confirmed that he did not request any responsive documents in the possession of their webmaster. *Id.* at 71-72. As stated above, Rule 34 imposes on Defendants an affirmative obligation to produce documents within their control, which includes those documents they can obtain from vendors. *F.T.C.*, 245 F.R.D. at 477.

> **RFP 20 (narrowed/revised):** Documents between Sussman personnel or any agents or attorneys acting on Sussman's behalf and Timeshare Clients regarding any of the Plaintiffs, including but not limited to documents that relate to or reference the cancellation of timeshare contracts or quit claim deeds.

> **SUPP. RESPONSE**: Defendants do not have employees but have produced documents relative to other parties assisting Defendants.

Defendants' discovery response is improper as it fails to identify the documents that are responsive to this request. *Gutescu*, 2003 WL 25589035, at *4. In addition, Sussman production lacks documents responsive to this request, including all communications and documents that Sussman (or his associates and third party exit companies on his behalf) exchanged with

Timeshare Clients.  Because Sussman testified that he conducts the initial analysis for each Timeshare Clients, which requires that he review the deed, mortgage, and note for the subject property, it is simply not possible that he has produced all responsive documents.  Ex. 3-4, Sussman Dep. 116: 24-25; 117: 1-19.

Indeed, Defendants' October production consists of 45 such transaction documents relating to 35 Timeshare Clients.  The production is similarly deficient and includes only one letter in which Sussman provides instructions to the Timeshare Clients regarding the signing and notarizing of the quitclaim deeds.  Ex 19.  Sussman simply has not produced all the documents and communications that he and his associates exchanged with Timeshare Clients.  Instead of expediting the production of all responsive documents, Defendants try to deflect from their failure to comply with the Court's Orders by muddying the waters with the red herring argument that the "staff" are independent contractors.  For the reasons stated in response to RFP 2, this argument ignores the clear law that "control" under Rule 34 turns on the legal right to obtain documents and not on the specious distinction between independent contractors and employees. *Costa*, 277 F.R.D. at 470-471.

Sussman and his Law Firm have also refused to produce the documents their referral sources exchanged with Timeshare Clients.  As defrauded Timeshare Client Diana Wenz testified during her deposition, Sussman did not communicate directly with her.  Instead, the company that cold-call her offering timeshare terminations services served as an intermediary between Wenz and the attorney assigned to her "case."  Ex. 20, Wenz Dep. 9:16-24; 48-49. During his deposition, Sussman corroborated Ms. Wenz account by testifying that he relied on third-party exit companies to communicate with clients and gather the information he needed to undertake the representation.  Ex. 3-4, Sussman Dep. 35-39; 117-119 (testifying that the third-

party exit company provides him a file containing the information he uses to perform an "initial analysis).

Even though the third party exit companies were an essential intermediary, the production also includes just a few documents between the third-party exit companies and Defendants. This includes letters terminating the representation and two retainer agreements memorializing the basis of the contractual relationship between the third-party exit company and the Timeshare Client. *See* Ex. 21. The production only includes one email between the third-party exit company and the Timeshare Client—nothing else. Ex. 22. To avoid needless discovery disputes, Westgate subpoenaed third-party exit companies JR Vacations Consultants and Newton Group to obtain evidence of their involvement with Defendants. These companies, however, ignored lawfully issued subpoena and to date refuse to comply. Sussman must be compelled to produce all documents between the Timeshare Clients and the third-party exit company, including all communications and contracts.

> **RFP 25:** All Documents used by you or anyone acting on your behalf to communication with potential or retained Timeshare Clients, including Timeshare Clients who were members of or had contracts with any of the Plaintiffs, including scripts, intake questions, and intake forms.
>
> **SUPP. RESPONSE:** Defendants have no script. Attached is the intake form which can be obtained on Defendants' website www.timesharelegalaction.com. No documents related to communications with potential or retained clients exist.

Sussman has not produced the Questionnaires/Intake Sheets *completed* by Timeshare Clients. Sussman has only produced a *sample* questionnaire even though, during his deposition, conceded that the completed documents are in possession of LiveWebMedia. Ex. 3-4, Sussman Dep. 73-7-25, 74:1. Defendants have an obligation to produce these records.

> **RFP 33**: All Documents relating to the fees/payments received by you from Timeshare Clients in relation with your timeshare exist services, including in connection with services provided in relation to any of the Plaintiffs.

**SUPP RESPONSE**: No documents related to fees/payment received by Defendants exist. An example Retainer Agreement has been previously produced.

Defendants' claim that no responsive documents exist is belied by Sussman's deposition testimony. Indeed, Sussman testified that he has a trust account into which all fees earned from Timeshare Clients are deposited and that he does not finalize an exit unless he has been paid in full. Ex. 3-4, Sussman Dep. 65-66. Sussman also admitted that each Timeshare Client executes a Retainer Agreement that sets forth the terms of the representation. *Id.* at 151:1-13. The only clients who do not execute the retainer are the Timeshare Clients who are referred to Sussman through third-party exit companies. *Id.* In those cases, the third-party exit company wires the fee to Sussman at the time of the referral. *Id.* at 178:1-9. The third party exit companies also send Sussman the documents Sussman may need to accomplish the "exit." *Id.* at 35-36, 117-119 Even though Defendants are in possession of the financial and other documents responsive to this request, Sussman has refused to produce these records and during his deposition alleged he did not deem them "relevant" to this proceeding. The relevance of this financial information was fully briefed on Westgate's motions to compel, which the Court granted. DE 60, 80. Accordingly, Westgate demands that Defendants supplement their discovery responses and produce all bank records and other evidence establishing the fees and agreements they received from Timeshare Clients and third party exit companies.

**RFP 34:** All Documents relating to correspondence and/or legal demand letters sent by you to any of the Plaintiffs.

**SUPP. RESPONSE**: No such documents in Defendants' possession.

Sussman's claim that he is not in possession of responsive documents is perplexing in light of the 238 demand letters included in Defendants' October 1 production. Sussman's production, however, is incomplete. It must be supplemented with each and every document

substantiating the fraud and misrepresentation claims Sussman pleads in his demands, including any communications between Sussman and any of his "associates" regarding the factual basis of the demand letters. For the reasons stated in response to RFPs 1, 2 and 20, Sussman must be compelled to search the records held by his staff as well as his own email and electronic files – or specifically advise that those documents are not within his possession, custody or control. If responsive records are not located, then Sussman should be required to explain the search conducted for responsive records and whether he has reason to believe responsive documents exist. *The Weitz Co., LLC*, 2008 WL 828117, at *3.

> **RFP 37:** All engagement or retainer agreements between you and any Timeshare Client who is or was a member of or has or had a contract with any of the Plaintiffs.

> **SUPP. RESPONSE:** Retainer Agreement form used for all Timeshare Clients was previously produced.

Throughout this litigation, Sussman has refused to produce the retainer agreements executed by Timeshare Clients. Despite two Court Orders mandating their production, Sussman has produced only a single *sample* of an agreement, again falling short of his discovery obligations. Responsive documents exist because, as Sussman testified, every Timeshare Owner that retained his services directly executed a retainer agreement. Ex. 3-4, Sussman Dep. 177:16-25. In addition, Sussman's production includes one letter that proves that some of the Timeshare Clients executed the retainer. *See* Ex. 23. Defendants have no basis to withhold the executed retainer agreements and must produce them immediately.

> **RFP 38:** All Documents evidencing Timeshare Clients who are or were a member of or have or had a contract with any of the Plaintiffs for the last 5 years.

> **RFP 40:** All records and files relating to any Timeshare Client who was a member of or had a contract with any of the Plaintiffs.

**RFP 41:** All Documents and communications between you and any Timeshare Client who was a member of or had a contract with any of the Plaintiffs.

**SUPPL. RESPONSE TO 38, 40 and 41:** See attached.

Sussman's discovery responses are improper as they fail to identify the documents contained in Defendants' production that are responsive to Westgate's requests. *Gutescu*, 2003 WL 25589035, at *4. Nevertheless, the production does not fully respond to these requests. Defendants' initial production contains a 241-page client list. Defendants did not produce the list in native format and, in the process of converting the document to PDF, altered the format of the list rendering it unreadable. Plaintiffs are entitled to the native format version of Defendants' purported client list—which Defendants have in their possession. Ex. 3-4, Sussman Dep. 153:11-14. *Teledyne Instruments, Inc. v. Cairns*, 6:12-CV-854-ORL-28, 2013 WL 5781274, at *9 (M.D. Fla. Oct. 25, 2013). Defendants' extensive client list also reveals that they have not produced all records and communications relating to Timeshare Clients. Indeed, the October 1 production that was served concurrently with the amended supplemental responses, relates to only 37 of the hundreds of Timeshare Clients at issue in this case.

As explained in connection with RFPs 1, 2 and 20, Sussman's alleged 2016 computer crash does not justify his failure to satisfy his discovery obligations. Indeed, the production lacks any records relating to the quitclaim deeds the Law Firm recorded in 2018. *See* Ex. 8. The deficiencies in Sussman's production are simply the result of his failure to properly search his paper and electronic records for the documents responsive to these requests. As he admitted during his deposition, ***Sussman's search was limited only to documents he could easily identify*** as relating to Westgate. Ex. 3-4, Sussman Dep. 31:2-8. In addition, as explained in response to RFPs 1, 2 and 20, Sussman has an obligation to produce the records held by his

associates and agents (such as the local lawyers and the third party exit companies), including the correspondence, deeds, and other records relating to Timeshare Clients.

**RFP 46:** All Documents relating to your total profits for the last five (5) years from services relating to Timeshare Clients, including Timeshare Clients who were members of or had contracts with any of the Plaintiffs.

**SUPP. RESPONSE:** No such documents in Defendants' possession.

Plaintiffs are entitled to information regarding, inter alia, Sussman's profits (including income statements, balance sheets and/or general ledgers) as the Court already ruled on its previous orders granting Plaintiffs' motion to compel. Despite the Court's overruling Defendants' boilerplate objections, Sussman has yet to produce any documents responsive to this request. In their supplemental discovery responses, Defendants assert that no responsive documents exist. This claim is contradicted by Sussman's deposition testimony during which he admitted that (1) he has a bank account into which payments from Timeshare Clients are deposited; (2) he prepares 1099-Misc Forms for each staff member that works for him; and (3) he receives invoices from all staff member that conduct work for Timeshare Clients. Ex. 3-4, Sussman Dep. 66:7-25; 257: 7-10. After acknowledging these records existed, Sussman testified that he did not produce these financial records because he did not believe they were relevant to the claims in this action. Sussman decision to withhold these responsive documents is reprehensible.

## IV.    SUSSMAN SHOULD BE SANCTIONED FOR FAILING TO COMPLY WITH THE COURT'S DISCOVERY ORDERS.

Federal Rule of Civil Procedure 37(b)(2) grants the court broad authority in sanctioning a party for failure to comply with a court order to provide discovery. *See* Fed. R. Civ. P. 37(b)(2)(A); *Gratton v. Great Am. Commc'n*, 178 F.3d 1373, 1374 (11th Cir. 1999). Rule 37 authorizes a court in such a situation to "issue further just orders," which may include striking

the pleadings and prohibiting a disobedient party from opposing a claim or asserting a defense" Fed. R. Civ. P. 37(b)(2)(A)(1). The authority to sanction a litigant that engages in bad faith litigation misconduct stems, not only from Rule 37, but also from the Court's inherent authority to manage its affairs. *Quiroz v. Superior Bldg. Maint., Inc.*, 06-21594-CIV, 2008 WL 3540599, at *5 (S.D. Fla. Aug. 12, 2008). Courts can dismiss an action were a litigant fails to comply with discovery orders, "commits perjury or . . . doctors evidence' that 'relates to the pivotal or 'linchpin' issue in the case.'").

Although dismissal is a harsh sanction, it is appropriate were "the record clearly reflect[s] a willful pattern of delay and obstruction of the orderly progress of the case" and no lesser sanction would ensure compliance with court orders. *United States v. One 2004 26' Angler Vessel*, 206CV-671-FTM-29SPC, 2008 WL 360603, at *1 (M.D. Fla. Feb. 8, 2008). Here, Sussman repeatedly flouted the Courts June, July, and September Orders and falsely affirmed under oath that he has complied with their discovery obligations. Sussman's sworn testimony is proven false by the hundreds of documents Defendants produced after the October 3, 2018 deposition.

Sussman cannot blame his discovery violations on a "misunderstanding" or inadvertent omission. Sussman himself was present during the September 26, 2018 hearing in which the Court ordered that he produce all documents subject to the June and July Orders, including those records relating to his staff, and warned that further sanctions would result should the responsive documents not be produced. Ex. 24, Hr'g Tr.:3-5; 24:9-14 (Sept. 26, 2018). Perhaps the most poignant evidence of Sussman's resolve to obstruct discovery is the meritless privilege objections he asserted during the depositions of Daniel Stern and James Klohn—the local lawyers that Defendants hired to prepare quitclaim deeds. On the basis of those objections,

Sussman instructed Klohn and Stern not to answer deposition questions.[3] Those objections and instructions were improper in light of the Court order overruling privilege over documents responsive to the First Request for Production. DE 80. In light of Sussman's willful pattern of delay and obstruction, the Court should strike his answer and enter judgment.

Should the Court not be inclined to impose this sanction, the Court should prohibiting Sussman from denying the facts plead on paragraphs 74 through 78 of the Amended Complaint. Because Sussman refuses to produce the documents that will prove the deeds are unlawful, then he should not be allowed to contest that fact. In addition, because Defendants have refused to produce their communications with Timeshare Clients, the Court should prohibit them from denying that they instructed the Timeshare Clients to default on their contracts—as plead on paragraph 60 of the Amended Complaint.

In the alternative, the Court should require Sussman and his Law Firm to produce, within 5 days of the entry of an Order on this Motion, the following documents:

- A client list in native format;

- The retainer agreements executed by Timeshare Clients;

- The deeds the Law Firm has recorded on behalf of Timeshare Clients;

- The communications between Sussman and his "associates" regarding Westgate and Timeshare Clients;

- All correspondence between the Law Firm and Timeshare Clients;

- All correspondence between the Law Firm and third-party exit companies;

- All correspondence between the Law Firm and the local lawyers Sussman hires to prepare quitclaim deeds on behalf of Timeshare Clients.

- All bank statements, cancelled checks, and wire transfers evidencing fees Defendants earned from providing services to Timeshare Clients;

---

[3] Plaintiffs will supplement this Motion once the deposition transcripts are available.

- All 1099 Misc Forms, checks, bank statements, and invoices evidencing Defendants payments to their associates who perform work for Timeshare Clients;

- The documents and communications the Law Firm generated as part of their representation of Timeshare Clients;

- All Local Counsel Agreement Defendants executed with any lawyer who prepared deeds on behalf of Timeshare Clients;

- All communications Defendants have received from Plaintiffs; and

- All materials Defendants have prepared or used to promote their timeshare termination services.

In supplementing their production, Defendants must be compelled to search and produce relevant records in possession of their vendors as well as current and former staff. *F.T.C.*, 2013 WL 1442180; *Novatus, Inc.*, 2015 WL 1125051. Because Defendants have disregarded three Orders requiring the production of these documents, the Court should require Sussman and his Law Firm to submit a declaration describing the search conducted for responsive records and whether they have reason to believe responsive documents exist. *CC-Aventura, Inc. v. The Weitz Co., LLC*, 06-21598-CIV, 2008 WL 828117, at *3 (S.D. Fla. Mar. 27, 2008).

## V.   REQUEST FOR ATTORNEY'S FEES PURSUANT TO FRCP 37(A)(5)(A)

Rule 37(a)(5)(A) authorizes the Court to require, again, that Sussman pay Westgate's expenses incurred in making this Motion. Here, Westgate served its First Request for Production on January 19, 2018. Sussman has never meaningfully responded to this request for production in spite of the June, July, and September Orders. Westgate is entitled to recover its reasonable attorneys' fees in accordance with Rule 37.

Dated: November 13, 2018          Respectfully submitted,

GREENSPOON MARDER LLP

_/s/ Jeffrey A. Backman_____
RICHARD W. EPSTEIN (FL Bar No. 229091)
richard.epstein@gmlaw.com
JEFFREY A. BACKMAN (FL Bar No. 662501)
jeffrey.backman@gmlaw.com
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954.491.1120
Facsimile: 954.343.6958
*Counsel for Plaintiffs*

## GOOD FAITH CONFERENCE CERTIFICATION

Pursuant to Local Rule 3.01(g), undersigned counsel for Westgate certifies that, as detailed above (p. 6), undersigned counsel for Westgate and counsel for Sussman conferred regarding the subject of this Motion.

_____/s/ Jeffrey A. Backman_____
JEFFREY A. BACKMAN

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have filed the foregoing with the Clerk of Court via CM/ECF this 13th day of November, 2018. I further certify that any party that enters an appearance in this matter will receive a copy of this document via CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notice of Electronic Filing.

_____/s/ Jeffrey A. Backman_____
JEFFREY A. BACKMAN